

Signed November 12, 2010.

_____
Ronald B. King
United States Chief Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| LISA ANN GALAZ, § | CASE NO. 07-53287-RBK | |
| § | | |
| DEBTOR § | CHAPTER 13 | |
| § | | |
| § | | |
| LISA ANN GALAZ § | | |
| § | | |
| VS. § | ADVERSARY NO. 08-5043-RBK | |
| § | | |
| RAUL GALAZ, ALFREDO GALAZ, § | | |
| SEGUNDO SUENOS, LLC § | | |

OPINION

Debtor, Lisa Galaz ("Debtor"), brought this action against her ex-husband, Raul Galaz; his father, Alfredo Galaz; and Segundo Suenos LLC, a Texas limited liability company, formed by Alfredo Galaz with the help of his son, Raul Galaz (collectively "Defendants"). Julian Jackson was joined as a Third Party Defendant, asserting his claims in concert with Debtor. Debtor's claim arises from a 2002 divorce decree and agreement incident to divorce between herself and Raul Galaz.

The divorce decree granted Debtor a 25 percent interest in Artist Rights Foundation L.L.C. ("ARF"), a California limited liability company formed by Raul Galaz and owned in equal shares with Julian Jackson. The primary contention asserted by Debtor is that Defendants defrauded her of the income from and the value of royalties, owned by ARF, to the music of the Ohio Players. Those royalties generated nearly a million dollars since 2005, but all of the money was paid to Defendants, with Debtor receiving no share of the profits despite her ownership interest in ARF. Defendants claim they alone had the right to the royalty payments because the rights were purchased by Defendant, Segundo Suenos, from ARF, in 2005. Raul Galaz dissolved ARF on December 27, 2006, such that assets of ARF have devolved to the individual owners of the LLC. (Def. Ex. 5).

There are four primary issues before the Court: (1) whether the transfer of the rights from ARF to Segundo Suenos was valid; (2) whether Raul Galaz breached a fiduciary duty to either Debtor or Jackson; (3) whether Defendants' disposition of the monies generated through exploitation of the rights was a fraudulent transfer as to either Debtor or Jackson; and (4) what remedies and damages would be appropriate.

I.  ***Was the transfer from ARF to Segundo Suenos valid?***

Debtor presents three primary arguments claiming that the transfer of the rights from ARF to Segundo Suenos was invalid: (1) Raul Galaz lacked authority to make the transfer unilaterally; (2) it was a fraudulent transfer; and (3) the matter has already been litigated in a court of competent jurisdiction, the transfer was found invalid, and principles of collateral estoppel compel the Court to reaffirm the invalidity of the transfer. For the reasons set forth below, all three of Debtor's

contentions will be sustained. Because the transfer was invalid, it was a fraudulent transfer to Segundo Suenos.

    A.    ***Raul Galaz lacked authority to make the transfer***.

The first theory advanced by Debtor is that Raul Galaz lacked the authority to transfer substantially all of the assets of ARF to Segundo Suenos. Defendants answer this charge by claiming that Raul Galaz was the only full member of ARF remaining at the time of the transfer, and therefore was the *only* person with such authority. To support this assertion, Defendants point to a letter sent in 2004 by Raul Galaz to Julian Jackson claiming that Jackson's membership interest in ARF would be terminated unless he remitted his share of the monies necessary to cover the company's expenses and taxes. Jackson did not respond, and Defendants claim this left Raul Galaz as the sole managing member of the company.

ARF was organized under the laws of California. An LLC in California can be run by managers or by its members. CAL. CORP. CODE § 17150 (Deering 2009). In this case, the articles of organization for ARF stated that it was to be managed by its members. Further, ARF's operating agreement stated:

> [T]he intent of each Member is to actively engage in the management of the Company. Accordingly, unless otherwise limited by the Articles or this Agreement, each Member shall have full, complete and exclusive authority, power, and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business, property and affairs.

(D. Ex. 2 § 4.1). Members of ARF, therefore, had full authority to deal with the company's business and property. Contained in the next section, however, was a limitation on the power of members. (D. Ex. 2 § 4.2). The limitations clause stated:

> [N]o member shall have authority to cause the Company to engage in the following transactions without first obtaining the approval of Members holding a majority of the Membership interests: (i) The sale, exchange or other disposition of all, or substantially all, of the Company's assets occurring as part of a single transaction or plan
> . . . .

*Id*. The fact that the rights to the Ohio Players' royalties were substantially all of ARF's assets was well established and was not disputed. Looking solely to the LLC documents, it is clear that members had authority to sell company property, but when the property transferred was substantially all of the entity's assets, approval by a majority of the membership interests was required.

Debtor claims Raul Galaz lacked majority approval in disposing of substantially all of ARF's assets because he did not obtain the approval of either Julian Jackson or herself. Defendants counter that Jackson was stripped of his status as a full member because he failed to remit his share of the corporate expenses after receiving a written request to do so. Further, Defendants argue that Debtor was never a voting member because she had only an economic interest in ARF.

Defendants' assertion that Debtor was solely an economic interest holder is correct. Debtor's community property interest in 50 percent of ARF terminated in 2002 upon divorce, and she received her ownership share of the company through operation of the agreement incident to divorce. The agreement is silent as to the nature of the interest, stating only that it is a 25 percent interest in the company known as ARF. Section 6.1 of ARF's operating agreement prohibited the transfer of membership interests except "with the prior approval of all Members, which approval may be given

4

or withheld in the sole discretion of the Members." (Def. Ex. 2 § 6.1). Debtor argues that by signing the divorce agreement, Raul Galaz gave his approval for Debtor to become a full member. There was no evidence presented, however, that Julian Jackson gave his prior approval to the transfer of membership interest to Debtor. Because a valid transfer of a full membership interest required the *prior* approval of *all* members, Debtor did not hold a full voting membership interest at the time of the alleged transfer of assets to Segundo Suenos.

Debtor instead held a purely economic interest. Section 6.3 of the ARF operating agreement provided that a transfer of interest in the company in violation of section 6.1 entitled the transferee to receive a share of the net profits and losses, but not to vote or participate in the management of the company. Because she was not entitled to vote or participate in management, her consent was not required.

While Debtor did not have a voting interest at the time of the Segundo Suenos transfer, Julian Jackson maintained his status as a full member of ARF. Defendants point to a letter sent from Raul Galaz to Jackson in October 2004, requesting that Jackson remit funds to cover his half of expenses and taxes incurred by ARF. The letter was sent to Jackson's address listed in ARF's Operating Agreement as of June 5, 1998. (Def. Ex. 2, 4). Defendants contend that this letter constituted "written notice" under the terms of section 3.2 of the operating agreement. Under the terms of the operating agreement, Jackson had 10 days to respond to a written notice of request for capital contributions. Failure to respond allegedly resulted in the conversion of Jackson's membership

5

interest to a non-participating economic interest.[1] Defendants argue, therefore, that Raul Galaz held the only participating membership interest at the time of the transfer to Segundo Suenos, and thus had full authority to make the conveyance unilaterally.

The written notice by Galaz to Jackson was insufficient to terminate Jackson's membership interest. First, the notice did not detail with any particularity the charges for services or capital contributions Jackson allegedly owed at that time, nor did it account for the capital contributions provided by Jackson at the formation of the company. Instead, the letter stated that Galaz had "incurred out-of-pocket expenses of over $8,500, tax debt of more than $5,000 exists, and I have not been paid one cent for my services." (Def. Ex. 4). Galaz then demanded that Jackson remit $6,750 to him personally plus an amount "equal to the fair value of my services," which he described as several hundred hours at a rate of $250 per hour. This letter was neither a legitimate demand for capital contributions nor an accounting of the company's expenses, but rather merely a pretext in Raul Galaz's scheme to defraud ARF and its interest holders for his own benefit.

This finding is supported by Galaz's decision to mail the letter to an address that, while technically the address listed for Jackson in ARF's operating agreement, would not result in the notice actually reaching Jackson. Galaz was aware of this fact because the two men were pitted against one another in litigation immediately prior, and this was specifically mentioned in the letter.

---

[1] Section 3.2 of the operating agreement stated that any member who fails to "make capital contributions to the Company as required hereunder shall be required to withdraw or resign as a Member upon ten (10) days written notice from . . . other members detailing the . . . services or capital contributions . . . [S]uch withdrawal . . . shall be deemed automatic unless such services or capital contributions are satisfied during the ten-day period . . .[S]uch Member shall thereafter only have the rights of a transferee as described in Section 6.3." Section 6.3 provides that a transferee without prior approval of the Members holds only an economic non-participatory interest in the company.

Raul Galaz's actions in this case show that he purported to abide by the letter of the law while committing outright fraud.

Because the notice to Jackson was neither sufficient nor actually served upon him, he remained a full member of ARF at the time of the purported transfer to Segundo Suenos. Therefore, under the terms of the operating agreement, Raul Galaz lacked the authority to transfer substantially all of the LLC's assets without the consent of Jackson. The transfer is thus void and unenforceable.

B. ***Defendants are collaterally estopped to claim the transfer is valid***.

Prior to this controversy, Defendant, Segundo Suenos, filed suit in California, against some of the Ohio Players heirs, asserting its rights to the royalties allegedly transferred to it by ARF. The California court denied the requested relief, finding that Segundo Suenos lacked standing because it failed to prove a valid transfer of the rights from ARF. Segundo Suenos appealed the judgment, and the appellate court affirmed the trial court's decision. ***Segundo Suenos, LLC v. Satchell***, 2009 WL 4646145 (Cal. App. 2d Dist. Dec. 9, 2009), *cert. denied*, 2010 WL 2324671 (2010). Specifically, the California courts held that the transfer failed to comply with United States copyright law and was therefore invalid and unenforceable.

The question presented is the preclusive effect to be accorded to the California state court judgment. Supreme Court precedent is clear that federal courts are to apply the same preclusive effect to state court judgments as state courts would apply. ***Allen v. McCurry***, 449 U.S. 90, 95-6 (1980) (citing 28 U.S.C. § 1738); ***Huron Holding Corp. v. Lincoln Mine Operating Co.***, 312 U.S. 183, 193 (1941); ***Davis v. Davis***, 305 U.S. 32, 39-40 (1938). California courts traditionally apply the doctrine of collateral estoppel if five threshold elements are met: (1) the issue sought to be

precluded is identical to that previously decided; (2) the issue was actually litigated; (3) the issue was necessarily decided; (4) the decision in the previous litigation was final and on the merits; and (5) the party against whom preclusion is sought is the same or in privity with the party from the prior proceeding. *Hernandez v. City of Pomona*, 207 P.3d 506, 511 (Cal. 2009) (citing *Lucido v. Superior Court*, 795 P.2d 1223, 1225 (Cal. 1990)).

The issue is the validity of the transfer of the rights from ARF to Segundo Suenos, which is identical to the issue tried by the California court in the prior lawsuit. The issue was actually litigated. The appellate court in the prior action noted in its decision that the trial was reopened for the specific purpose of giving Segundo Suenos an opportunity to present further evidence to prove the assignment. After reopening, Segundo Suenos failed to prove the validity of the assignment of the rights. The decision of the trial court was based on the merits, is final, and was upheld on appeal. Finally, Segundo Suenos is the same party in both actions. *Satchell*, 2009 WL 4646145 at *2-3.

With the presence of these elements, one more issue remains. "In addition to these factors . . . the courts consider whether the party against whom the earlier decision is asserted had a 'full and fair' opportunity to litigate the issue." *Nein v. HostPro, Inc.*, 95 Cal. Rptr. 3d 34, 44-45 (Cal. App. 2d Dist. 2009) (quoting *Roos v. Red*, 30 Cal. Rptr. 3d 446, 452 (Cal. App. 2d Dist. 2005)). Further, "[i]n the context of collateral estoppel . . . the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication." *Id*. at 45 (citations omitted).

Defendants had a full and fair opportunity to litigate the validity of the transfer of the rights in California courts at both trial and on appeal. The second question is whether Defendants should

reasonably have expected to be bound by the prior adjudication. In California, Segundo Suenos was in the role of plaintiff, and the ultimate decision rested on the question of Segundo Suenos's standing to bring the suit. Determination of that issue, however, depended on the validity of the transfer. In bringing the suit, requesting and receiving a reopening of the case, and later appealing the decision, Defendants were aware and should reasonably have expected that they would be bound by the court's determination as to the validity of the transfer.

The transfer of the rights from ARF to Segundo Suenos was ineffective. Defendants are collaterally estopped to claim otherwise by the final California judgment. Even if they were not so estopped, the evidence presented at trial compels the ineluctable conclusion that Raul Galaz lacked the authority to transfer substantially all of ARF's assets at the time of the purported transfer. Debtor therefore retains a 25 percent interest in the assets of ARF, and the royalty rights were not validly transferred by ARF.

II.     ***Did Raul Galaz breach his fiduciary duty to Debtor and/or Jackson?***

There are two distinct questions concerning Debtor's assertion that Raul Galaz's actions in the purported transfer and subsequent waste of company assets was a breach of fiduciary duty owed to Debtor and Julian Jackson. First is whether Galaz owed a fiduciary duty to each party and the nature of that duty. Second is whether the conduct complained of amounted to a breach of that fiduciary duty.

A.      ***To whom did Raul Galaz owe a fiduciary duty?***

Under California law, a manager of an LLC owes a fiduciary duty to the members and the company in the same manner that a partner in a partnership owes to the other partners and the

9

partnership. CAL. CORP. CODE § 17153 (Deering 2010). ARF's articles of incorporation stated the company was to be managed by its members. (Def. Ex. 1). The company's operating agreement further stated that "intent of each Member is to actively engage in the management of the Company. (Def. Ex. 2 § 4.1). Because Raul Galaz was a full member of the company, he was also a manager of the company. This is further evidenced by the company's "Statement of Information" filed with the California Secretary of State each year. On multiple occasions, a statement of information was filed for ARF representing that Raul Galaz was either the sole managing member or the president of the company.

As a manager of ARF, Raul Galaz owed a fiduciary duty to the LLC and to its members. As noted above, Julian Jackson retained his status as a full member of ARF at all times. Under the clear terms of the California statute, Raul Galaz owed Julian Jackson a fiduciary duty in his dealings with regard to ARF.

Lisa Galaz, however, only established her interest as an economic interest in ARF. Because the California LLC statute governing fiduciary duty explicitly adopts the fiduciary relationship between partners in a partnership, it is appropriate to look to case law on partnerships in analyzing this issue. In **Bookstein v. Gross**, a California appellate court stated that "the limits placed on partnership assignees prevent an assignee from maintaining an action against a general partner for breach of fiduciary duty." **Bookstein v. Gross**, 2004 WL 2439589 at *6 (Cal. App. 2d Dist. Nov. 2, 2004) (citing **Kellis v. Ring**, 92 Cal. App. 3d 854, 860 (Cal. App. 2d Dist. 1979)). Where the person asserting breach is not a member or full partner, the law is clear that there is no fiduciary duty owed for which breach can be found. *Id*. Applying this statement of law, Raul Galaz did not owe Debtor,

10

as an economic interest holder, a fiduciary duty. Debtor cannot maintain a claim for breach of fiduciary duty against Raul Galaz.

### B. *Did Raul Galaz breach his fiduciary duty to Julian Jackson?*

Because Raul Galaz owed a fiduciary duty to ARF and Julian Jackson, as a member of ARF, the issue becomes whether that duty was breached. Under California law, a managing member owes duties of loyalty and care to the other members of an LLC and to the LLC. CAL. CORP. CODE § 16404(a) (Deering 2010). Specifically, the duty of loyalty is defined to include a responsibility to account for and hold as trustee any property, profit, or benefit derived from the conduct of the business. CAL. CORP. CODE § 16404(b)(1) (Deering 2010). The duty of care in the conduct of the business is limited by statute to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law. CAL. CORP. CODE § 16404(c) (Deering 2010).

The facts and evidence presented at trial proved conclusively that Raul Galaz breached both of these duties in his conduct of the business of ARF. Raul Galaz purported to transfer, for no consideration, the royalty rights of ARF to Segundo Suenos in June 2005, over three months prior to the actual creation of Segundo Suenos, LLC. Not surprisingly, the first royalties from the Ohio Players works were received within months of the transfer. Raul Galaz then spent almost all of the money generated by the royalties without accounting for it to Jackson, Debtor, or the LLC. He claimed he was owed money for his legal services on behalf of ARF, but he made such a claim with a lack of specificity as to the services provided and the time spent in such endeavors. Further, due to a felony conviction for mail fraud, Raul Galaz had resigned from the State Bar of California on

June 3, 2002, and was formally disbarred in 2007. Raul Galaz was not a licensed attorney during much of the time he claimed to be providing legal services for ARF. Galaz should not receive *any* recompense for such services in light of his breach of fiduciary duty. Raul Galaz breached his duty of loyalty by his failure to account for the property and profits derived from the conduct of the business of ARF, and by formally dissolving ARF on December 27, 2006.

In addition to breaches of fiduciary duty, Raul Galaz also breached his duty of care through his intentional misconduct. Raul Galaz perpetrated an intentional fraud on Lisa Galaz, Julian Jackson, and ARF in an effort to secure the valuable royalties for his own benefit. This scheme was perpetrated through an illegitimate "sale" of the assets for no consideration to an LLC purportedly owned by an insider: his father. Alfredo Galaz was a mere straw man, while Raul Galaz acted at all times with full knowledge of the illegitimacy of his actions and with the intent to so act.

III.    *Fraudulent Transfer*.

The purported transfer of royalties from ARF to Segundo Suenos was a fraudulent transfer under TUFTA, TEX. BUS. & COMM. CODE § 24.005(a), and is set aside. A number of the badges of fraud listed in section 24.005(b) were present and are the basis for strong inferences of fraud. *In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008).

IV.    *Remedies*.

Debtor will be awarded $250,000, and Julian Jackson will be awarded $500,000, as actual damages against Raul Galaz and Segundo Suenos, jointly and severally. The damages may be offset against income attributable to Raul Galaz's 25 percent ownership of the music royalties. The music rights to the Ohio Players will be owned 50 percent by Julian Jackson, 25 percent by Debtor, and 25

percent by Raul Galaz, as an economic interest only.[2] All proceeds attributable to Raul Galaz's 25 percent will be paid to Jackson and Debtor until their actual and exemplary damages awarded in this judgment are satisfied.

In addition, Julian Jackson and Lisa Galaz should receive exemplary damages as a result of Raul Galaz's breach of fiduciary duty and intentional fraud committed with malice. *See* ***Brosseau v. Ranzau***, 81 S.W.3d 381, 396 (Tex. App.–Beaumont 2002, pet. denied) ("[a] defendant's intentional breach of fiduciary duty is a tort for which a plaintiff may recover punitive damages."). The Court will award an additional $500,000 in favor of Julian Jackson and an additional $250,000 in favor of Lisa Galaz against Raul Galaz as exemplary damages.

The preliminary injunction previously granted on May 9, 2008, in this adversary proceeding will be made permanent. Defendants will be ordered not to spend, dissipate or transfer any funds or assets of Segundo Suenos. In addition, Defendants will be ordered to turn over all such assets and evidence of their ownership to Julian Jackson and Debtor as co-owners of the royalties.

Debtor and Jackson are awarded costs of court, and Debtor is awarded attorney's fees for a successful action under TUFTA. TEX. BUS. & COMM. CODE § 24.013 (Vernon 2010). Debtor's attorney may submit a postjudgment affidavit concerning attorney's fees within fourteen days.

---

[2]Ownership at the ratios indicated may be taken in the parties' individual capacities, or at the unanimous option of Debtor and Julian Jackson, in a limited liability company. The evidence showed that Julian Jackson created a new LLC with the same name after the dissolution of ARF by Raul Galaz (Def. Ex. 83). If an LLC is used, Raul Galaz would hold only an economic interest and would not be a voting member.

This Opinion shall constitute the findings of fact and conclusions of law of this Court under Fed. R. Bankr. P. 7052. A separate judgment will be rendered.

# # #